*Hiland Hall* and *Samuel H. Blackmer,* for the defendant.

———

SAMUEL PENFIELD vs. DAVID COOK.

A party to a suit is not a competent witness to prove the loss of a penal bond, with a view to the introduction of secondary proof of the contents of such bond.

THE question arising in this cause was brought before the Court in the following *case stated.*

*Supreme Court, January Term,* 1824.

This was an action of debt on a penal bond, alleged in the declaration to have been lost, by time and accident. The plaintiff proved the existence of the bond described, and then offered himself as a witness, to prove the loss of it. The Court refused to let him testify to the loss, and the plaintiff entered a non-suit, subject to the opinion of the Court.

If the court should be of opinion, that the plaintiff ought to have been admitted to testify to the loss of the bond aforesaid, then the said non-suit is to be set aside, and a new trial granted; but if the Court should be of opinion, that the plaintiff ought not to have been admitted, the non-suit shall remain, and judgment be rendered for the defendant to recover his costs.

(Signed) &c.

Allowed, on the agreement of the parties.

RICHARD SKINNER, } Judges.
ASA AIKENS, }

*Thompson,* for the plaintiff. The only question presented by the case is, whether a party can be permitted to swear to the loss of a paper. He insisted that the necessity of the rule required, and the danger to be apprehended, did not forbid the practice; that the case of agents is stronger than the one under consideration. An agent may swear that he has paid over money for his principal, when in fact he has not; whereas, a party that swears to the loss of a paper, must still prove the execution and the contents of it. He cited 2 *Str.* 647—3 *Wils.* 40.—4 *Term, Rep.* 590.

Chittenden,
December,
1825.

Penfield
vs.
Cook.

That there is no extraordinary danger to be apprehended from admitting a party to swear to the loss of an instrument, because he must prove the execution and delivery, and before he can derive any benefit from his own oath, he must also prove, by disinterested witnesses, the *contents* of the paper lost. The danger of *misrepresenting* the contents, is certainly not more to be dreaded, than the evils arising in many other cases, where parties and interested witnesses are permitted to swear, from the necessity of the case : as approvers, accomplices, servants, agents, and parties in actions on book account. The latter, it is true, are here admitted by virtue of a statute ; but in some of the states, they are admitted, without the aid of any statute, to swear to the delivery of goods, and the performance of labour.

The loss of a paper must necessarily be established by presumptive proofs, which, in most instances, cannot be more satisfactory to the human mind, than the positive testimony of the party, who alone can know the fact.

The practice, he said, had been adopted in several cases ; and cited 2 *Doug. R.* 116—3 *Mass. R.* 236—16 *Johns. R.* 193, and *Swift's Ev.* 31.

*Adams*, for the defendant. The position for which the plaintiff contends, is in opposition to the positive rule of evidence, that a party shall not be permitted to testify in his own cause. But it is said, that though the party cannot testify to the jury upon the principal point, he may testify to the court upon a collateral matter. There is no good reason for this distinction ; Courts, in the examination of facts, are to be governed by the same rules of testimony as juries, and if this evidence is not admissible to the jury, it cannot be to the Court.

Whether the loss of a paper is a question for the Court alone, or not, it is not necessary to determine. The cases are not uniform on this subject. But if this point be conceded, it does not follow, that the Court will receive evidence from an improper source.

It is contended, there is a difference between primary and secondary proof, if I may so distinguish ; that is, that whatever is to be made out, before secondary proof can be admitted, may be shown by the party, and to this point may be cited cases, where Courts have permitted the party to testify to the death or absence of subscribing witnesses, in order to let in other proof of the hand writing. But this distinction cannot be supported, and the cases cited, will by no means warrant the inferences. The cases where parties have been permitted to testify to the death of subscribing witnesses, are the strongest, if not the only cases to be found. This evidence, if admissible, is as proper for the jury as the Court ; but the consequence of its admission is not the introduction of secondary testimony. It has been contended, that the subscribing witness, if living, &c. must be produced. This, at best, is but a technical rule, and its propriety may be questioned ; for it is difficult to perceive why the subscribing witness is better than any other who may know the hand-writing of the party.

13

*Chittenden,*
December,
1825.

Penfield
*vs.*
Cook.
The death or absence of a subscribing *witness, is* of but little importance, in the determination of a cause. Not so the loss of a bond. It is a material and traversable fact, and was so determined, in the case of Colman and Woolcott.—*4 Day's Rep.* 388—11 *Mass.* 282, *Cady* vs. *Egglestone and Goodwin.*

It will not be contended, that any adjudged cases warrant the position for which plaintiff contends; and there are no reasons of necessity or policy, demanding the adoption of a new rule of evidence. It is ever dangerous to break in upon long established rules, and it is believed that the consequences which would follow, would be injurious, and result in the accumulation of perjuries.

*Thompson,* in reply, contended, that the principles recognized in the adjudged cases, necessarily embraced the case in question. He said there was no reason justifying the distinction which permits a party to testify to a collateral fact, and prevents his testifying to the loss of the instrument, on which his action or his defence is founded. The one is as material to his success in the suit, at the time he testifies, as the other, and is no more difficult to be proved by disinterested witnesses.

SKINNER, Ch. J. delivered the opinion of the Court.

In this case, issue having been joined between the parties, the plaintiff, on trial, proposed to show to the Court, by his own testimony, the loss of the bond declared upon, for the purpose of introducing secondary testimony, in support of the action. The Court having rejected the testimony of the party, a nonsuit was entered, and the motion now is, to set aside the nonsuit.

It is a general rule of the common law, that a party in the suit, cannot be a witness for himself. This is a safe and salutary rule, and ought not to be departed from. But it is said, that although the party cannot be a witness in chief, he may testify to collateral facts, and thereby lay the foundation for the introduction of secondary testimony; and the cases in which the oath of the party has been admitted, to prove the absence or death of the subscribing witness, so that other testimony of the execution of the instrument might be given, are relied upon. If these cases form an exception to the general rule, it furnishes no ground for making a further exception, unless the cases are, in principle, strictly analogous.

The testimony of any other than the subscribing witness is not *inferiour* in its kind, to the testimony of the subscribing witness himself. If such witness, when called to prove the execution of the instrument, should deny it, and should testify that the hand writing was not his, or not that of the party, his testimony is not conclusive. The plaintiff is then at liberty to prove the execution, &c. by other testimony.—*Doug.* 216.

The testimony proposed to be given in this case, (should the party testify to the loss of the bond) is in its kind, *inferiour* to the instrument itself. No testimony can be admitted, to con-

tradict the writing----it is upon that alone the cause is to be de-
cided.

I find no authority to justify the position, that the loss of the
instrument is a preliminary question, to be decided by the Court;
and from the case in the 3 *Term Rep.* 151, the contrary is to be
inferred. In some of the states, it has been decided, that this
is a preliminary question, and that the party may testify to the
loss, or destruction of the instrument, or writing. That the rule
at common law is otherwise, I think cannot be doubted; and
this rule has been adhered to in several of the states, nor has it,
as we believe, been departed from here; and we are not at lib-
erty to decide contrary to the well known settled principles of
the common law: the legislature have adopted it as the law of
the state.

All the reasons that induced the adoption of the general rule,
that a party should not testify for himself, will apply with full
force to the present case. The evidence of payments upon
bonds, or notes, usually rests upon endorsements made thereon;
and when satisfied, they are destroyed. It would be as much for
the interest of the party, to testify to the loss of a note, or bond,
upon which payments have been endorsed, or that has been sat-
isfied and destroyed, as to testify directly to the loan of so much
money, or to any contract for the payment of a like sum; and
his credit is as much to be suspected in the one case, as in the
other. Rule discharged.

HUTCHINSON, J. I feel it my duty to express myself so far
opposed to the opinion now delivered by the chief justice, as to
be at liberty further to investigate the subject; as I understand it
will come before us in other counties: though I acknowledge
much force in the reasoning now adopted, in relation to those
instruments, and upon which payments may probably be endors-
ed.

*J. C. Thompson,* for the plaintiff.

*Chs. Adams,* for the defendant.